UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Small Business in Transportation Coalition** ) | | |
| 1775 I St., NW Suite 1150 ) | | |
| Washington, D.C. 20006 ) | | |
| ) | | |
| **Plaintiff** ) | | |
| ) | | |
| **v.** ) | **COMPLAINT** |
| ) | |
| **U.S. Department of Transportation** ) | **CIVIL ACTION NO:** |
| 1200 New Jersey Ave., SE ) | |
| Washington, DC 20590 ) | |
| ) | |
| **and** ) | |
| ) | |
| **Elaine L. Chao,** *in her official capacity as* ) | |
| *Secretary of the Department of* ) | |
| *Transportation* ) | |
| 1200 New Jersey Ave., SE ) | |
| Washington, D.C. 20590 ) | |
| ) | |
| **and** ) | |
| ) | |
| **Federal Motor Carrier Safety** ) | |
| **Administration** ) | |
| 1200 New Jersey Ave., SE ) | |
| Washington, D.C. 20590 ) | |
| ) | |
| **and** ) | |
| ) | |
| **Jim Mullen,** *in his official capacity* ) | |
| *as Acting Administrator of the Federal* ) | |
| *Motor Carrier Safety Administration* ) | |
| 1200 New Jersey Ave., SE ) | |
| Washington, D.C. 20590 ) | |
| ) | |
| **Defendants** ) | |

## COMPLAINT AND REQUEST FOR A TEMPORARY RESTRAINING ORDER (TRO)

1.     The Small Business in Transportation Coalition ("SBTC"), by and through the

undersigned Counsel, files this Complaint against Defendants United States Department of

Transportation ("the Department"), Secretary Elaine L. Chao ("Secretary"), Federal Motor

Carrier Safety Administration ("FMCSA") and Jim Mullen, Acting Administrator

("Administrator"), collectively, "the Defendants," and hereby allege the following:

## JURISDICTION

2.      This action arises under the Administrative Procedure Act (APA) 5 U.S.C. §§ 553, 701-

706. This Court has subject matter over this action because it is a cause arising under federal law.

28 U.S.C. §1331. In addition, this Court has the authority to issue declaratory relief sought

pursuant to 28 U.S.C. §2201.

3.      This action is not asking this Court to determine the validity of any relevant statutes or

regulations. Rather, this action is asking this Court to determine whether or not the Defendants

acted lawfully under the relevant statutes or regulations.

4.      This is an action against officers and agencies of the United States. Therefore, venue is

proper in this Court under 28 U.S.C. §1391(e). Venue and personal jurisdiction are also proper in

this Court because Defendants the  Department and the FMCSA  reside in this judicial district.

Defendants Elaine L. Chao and Jim Mullen perform their official duties in this judicial district,

and the events giving rise to this action took place in this judicial district.

## THE PARTIES

5.      The SBTC is a 501(c)(6) trucking industry trade group representing interstate truckers

and motor carriers, among other small players in the transportation industry. SBTC brings this

Complaint on behalf of its members.

6.     The SBTC has standing to bring this Complaint against Defendants because (1) the individual members of the SBTC are injured by the actions of the Defendants, (2) the interest this lawsuit is trying to protect is germane to the SBTC's purpose, and (3) neither the claim asserted nor the relief requested requires participation of individual members of the SBTC in the Complaint.

7.     The United States Department of Transportation is a Federal Cabinet department of the U.S. government concerned with regulating transportation in the United States.

8.     Secretary Elaine L. Chao is the Secretary of the United States Department of Transportation and is in charge of administering the rules and regulations of the Department and has delegated authority to the FMCSA in accordance with 49 U.S. Code § 322.

9.     The Federal Motor Carrier Safety Administration is an agency within the Department that regulates the trucking industry in the United States.

10.    Acting Administrator Jim Mullen is the administrator of the FMCSA and is in charge of administering its rules and regulations.

## FACTUAL ALLEGATIONS

11.    The SBTC challenges the FMCSA's summary and unlawful delay in the decision of the SBTC's Electronic Logging Device ("ELD") Exemption Application, which SBTC filed behalf of its membership on August 09, 2019, FMCSA's summary and unlawful delay in the publication and decision of the SBTC's Transportation Intermediary Broker Bond Exemption Application, which SBTC filed on behalf of its membership on September 10, 2019 and FMCSA's summary and unlawful delay in the publication and decision of the SBTC's Hours of Service (HOS) Exemption Application relating to the City of Midland, Texas, which SBTC filed

on behalf of its membership on February 12, 2019. All of these delays violate the APA because Congress has enacted a statute that expressly requires the FMCSA to take specific actions on applications similar to those submitted by the SBTC, by a specific date.

12.     On August 09, 2019, the SBTC filed an ELD Exemption Application on behalf of its members with the FMCSA, in a letter addressed to FMCSA Administrator Ray Martinez. **See EXHIBIT A.**

13.     On September 10, 2019, the SBTC filed a resubmission of Transportation Intermediary Bond Exemption Application pursuant to 49 U.S.C. § 31315(b)(3) and 49 CFR 381.317, which was required to be published in the Federal Register "upon receipt" pursuant to 49 U.S.C. §31315. **See EXHIBIT B.**

14.     The SBTC's Transportation Intermediary Bond Exemption Application was filed in a letter to FMCSA Administrator Ray Martinez via U.S. mail and via email.

15.     On October 29, 2019, the FMCSA posted a Notice in the Federal Register requesting public comments on the SBTC's ELD Exemption Application on behalf of its members. Public comments were due by November 29, 2019.

16.     On November 19, 2019, Acting Administrator Jim Mullen wrote to SBTC Executive Director James Lamb informing him that "The Agency is processing your request in accordance with 49 CFR part 381, "Waivers, Exemptions, and Pilot Programs." Under § 381.320 FMCSA must issue a final decision within 180 days after receiving an exemption request." **See EXHIBIT C.**

17.     On December 30, 2019, LaTonya Mimms, FMCSA Chief of Driver and Carrier Operation sent an email to SBTC Executive Director James Lamb informing him that "The

Federal Register Notice for the subject request (SBTC's Transportation Intermediary Broker Bond Exemption Application) has been drafted and is currently under departmental review. The notice along with the corresponding application will be published within the 180-day period."

18.     The FMCSA has failed to publish both the notice and a decision in the Federal Register regarding the SBTC's Transportation Intermediary Broker Bond Application.

19.     The FMCSA has yet to render and publish a decision in the Federal Register regarding the SBTC's ELD Exemption Application, which was submitted on August 09, 2019.

20.     FMCSA's failure to make a decision on the SBTC's ELD Exemption Application and the SBTC's Transportation Intermediary Broker Bond Exemption Application  and publish that decision in the Federal Register violates 49 U.S. Code §31315(b)(7), which states:

> (7) _Applications to be Dealt With Promptly_ -- The Secretary
> shall grant or deny an exemption request after a thorough
> review of its safety implications, **but in no case later than**
> **180 days after the filing of such request. (Emphasis added).**

21.     It has been well over 7 months  since the SBTC filed its ELD Exemption Application and the FMCSA has still not rendered a decision on the application and filed that decision in the Federal Register.

22.     It has been over 180 days since the SBTC filed its Transportation Intermediary Broker Bond Exemption Application to the FMCSA and the FMCSA has still not published the notice of the application nor rendered and published a decision on the application.

23.     It is the SBTC's belief that every other ELD exemption application that has been submitted to the FMCSA for consideration and published in the Federal Register by other

trucking associations, was decided upon within 6 months from the date of filing, as per 49 U.S. Code §31315(b)(7).

24.     The FMCSA purposely and intentionally discriminated against the SBTC and its members by treating it differently than every other trucking association that filed an ELD Exemption Application.

25.     In delaying and refusing to render and publish in the Federal Register a decision regarding the SBTC's ELD Exemption Application and the SBTC's Transportation Intermediary Broker Bond Exemption Application, FMCSA failed to complete notice and comment rulemaking within the specific time period of 180 days prescribed by Congress, failed to provide a reasonable justification for its delay, acted arbitrarily and capriciously and in excess of statutory justification, authority, or limitations or short of statutory right, and withheld or unreasonably delayed agency action, all in violation of the Administrative Procedure Act, 5 U.S.C. § 552, et. seq.

26.     On October 1, 2018, the City of Midland, Texas enacted a law that prohibited the parking of commercial vehicles on public streets and private areas citywide (local City of Midland ordinance).

27.     The local City of Midland ordinance prevents operators of commercial motor vehicles operating under ELDs from parking their vehicles to cease operation after 11 hours of driving time, and from parking their vehicles to cease operation after having been on duty for 14 hours, and from parking their vehicles to take their mandatory 30 minute break, as per FMCSA regulations, within the city limits of the City of Midland.

28.     The local City of Midland ordinance imposes a $500 fine on interstate truck drivers who park their vehicles in the City of Midland, when attempting to comply with Federal HOS regulations.

29.     On February 12, 2019, in response to the City of Midland's ordinance, the SBTC filed an application with the Secretary for a class exemption of the HOS rules on behalf of SBTC members, as well as all other truck and bus drivers who operate in interstate transportation and pass through the City of Midland, Texas.

30.     The SBTC's February 12, 2019 exemption application was in full compliance with the Federal regulations relating to the process and procedure for filing an exemption request with the FMCSA.

31.     On February 18, 2019, in response to an email from the SBTC's government affairs consultant inquiring as to the status of the SBTC's exemption application against the City of Midland, Larry W. Minor, Associate Administrator for Policy with the FMCSA responded:

> "We acknowledge the complaint against the City of Midland but do not believe the complaint should be construed to serve as an application for an exemption. The exemption statute and implementing regulations clearly require that you present an alternative to the regulations from which you seek relief. And you should present your assessment how the alternative would achieve the requisite level of safety."

32.     On February 19, 2019 SBTC President James Lamb wrote an email to FMCSA Associate Administrator for Policy, Larry W. Minor disagreeing with his analysis and stating that the FMCSA does not have the legal authority to unilaterally determine what is an exemption application and what is not. And further, the FMCSA has a duty to publish the document that is

intended to be an exemption to HOS regulations for truck drivers traveling through the City of Midland, Texas "upon receipt".

33.    The FMCSA continues to refuse to publish the SBTC's HOS Exemption Application relating to the City of Midland, Texas in the Federal Register for notice and public comment in violation of its lawful obligation to do so.

34.    The FMCSA's failure to publish the SBTC's HOS Exemption Application relating to the City of Midland, Texas in the Federal Register violates 49 U.S.C. §31315(b)(6)(A), which states as follows:

> *(6) Notice and Comment– (A) Upon receipt of a request. – **Upon receipt** of an exemption request the Secretary shall publish in the Federal Register (or, in the case of a request for an exemption from the physical qualification standards for commercial motor vehicle drivers, post on a website established by the Secretary to implement the requirements of section 31149) a notice explaining the request that has been filed and shall give the public an opportunity to inspect the safety analysis and any other relevant information known to the Secretary and to comment on the request. This subparagraph does not require the release of information protected by law from public disclosure. (Emphases added).*

35.    In failing to publish in the Federal Register  notice of receipt of the SBTC's HOS Exemption Application relating to the City of Midland, Texas "upon receipt," the FMCSA failed to engage in the mandatory notice and comment process, failed to provide a justification for its inaction, acted arbitrarily and capriciously and in excess of statutory justification, authority, or limitations or short of statutory right, and withheld or unreasonably delayed agency action, all in violation of the APA, 5 U.S.C. § 552, et. seq.

## CAUSES OF ACTION

### COUNT 1

### Failure To Adhere To Procedures Required By Law

36.    Paragraphs 1 through 35 of this Complaint are incorporated herein by reference.

37.    The APA provides a general cause of action for parties adversely affected or aggrieved by agency action for which there is no other adequate remedy in court. 5 U.S.C. §§ 702-704.

38.    Under the APA, a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §706 (1).

39.    The APA requires all agencies to give "(g)eneral notice of proposed rule-making" and provide "interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation." 5 U.S.C. § 553(b), (c).

40.    The FMCSA knowingly and intentionally violated 49 U.S.C. § 31315(b)(7) by failing to grant or deny the SBTC's ELD Exemption Application request **within 180 days** after the filing date of such request. (Emphasis added.)

41.    The FMCSA knowingly and intentionally violated 49 U.S.C. § 31315(b)(6)(A) by failing to publish in the Federal Register the SBTC's Transportation Intermediary Broker Bond Exemption Application request "**upon receipt**" of said exemption request and commence a notice and comment period. (Emphasis added.)

42.     The FMCSA knowingly and intentionally violated 49 U.S.C. § 31315(b)(7) by failing to grant or deny the SBTC's Transportation Intermediary Broker Bond Exemption Application request **within 180 days** after the filing date of such request. (Emphasis added.)

43.     The FMCSA knowingly and intentionally violated 49 U.S.C. § 31315(b)(6)(A) by failing to publish in the Federal Register the SBTC's HOS Exemption Application relating to the City of Midland request **"upon receipt"** of said exemption request and commence a notice and comment period. (Emphasis added.)

44.     The FMCSA knowingly and intentionally violated 49 U.S.C. § 31315(b)(7) by failing to grant or deny the SBTC's HOS Exemption Application relating to the City of Midland **within 180 days** after the filing date of such request. (Emphasis added.)

45.     As a result of FMCSA's failure to adhere to procedures required by law, the SBTC's members suffered a direct injury.

46.     The FMCSA should therefore be required to immediately grant or deny the SBTC's ELD Exemption Application request and publish that decision in the Federal Register pursuant to 5 U.S.C. § 706(2)(D).

47.     The FMCSA should therefore be required to immediately publish the SBTC's Transportation Intermediary Broker Bond Exemption Application and commence a notice and comment period in the Federal Register pursuant to 5 U.S.C. § 706(2)(D).

48.     The FMCSA should therefore be required to immediately publish the SBTC's HOS Exemption Application request as to interstate truck travel through the City of Midland, Texas in furtherance of interstate commerce and commence a notice and comment period in the Federal Register pursuant to 5 U.S.C. §706(2)(D).

## COUNT II

### Arbitrary and Capricious Action

49.     Paragraphs 1 through 48 of this Complaint are incorporated herein by reference.

50.     The APA provides a general cause of action for parties adversely affected or aggrieved by agency action for which there is no other adequate remedy in court. 5 U.S.C. § 702-704.

51.     Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law … [and] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

52.     When delaying, modifying, amending, and/or repealing a duly promulgated rule, the agency must identify its authority or basis to do so.

53.     FMCSA refused to publish in the Federal Register and act on SBTC's City of Midland HOS Exemption Application; thereafter, by failing to process SBTC's ELD Exemption Application after the acting administrator explicitly promised SBTC the agency would do so in writing on November 19, 2019, and thereafter by filing to publish in the Federal Register and act on SBTC's Transportation Intermediary Broker Bond Exemption Application, the FMCSA knowingly and intentionally violated the Administrative Procedure Act by treating SBTC and its members in an arbitrary and capricious manner.

54.     49 U.S.C. §13541(a) provides that:

> (a) "the Secretary or the Board, as applicable, **_shall_** exempt a person, class of persons, or a transaction or service from the application, in whole or in part, of a provision of this part, or use this exemption authority to modify the application of a provision of this part as it applies to such person, class, transaction, or service, when the Secretary or Board finds that the application of that provision—

*(1) is not necessary to carry out the transportation policy of section 13101;*

*(2) is not needed to protect shippers from the abuse of market power or that the transaction or service is of limited scope; and*

*(3) is in the public interest. (Emphasis added.)*

55.     The FMCSA has no authority to delay decisions on exemption applications beyond the 180-day statutory requirement, yet it has done so in the case of the SBTC's ELD Exemption Application, its Transportation Intermediary Broker Bond Exemption Application and its City of Midland HOS Exemption Application, but not in the case of other trade groups' exemption applications.

56.     The FMCSA has no authority to withhold publication of exemption applications in the Federal Register upon receipt of such exemption applications.

57.     The FMCSA abused its discretion and acted in excess of statutory jurisdiction, authority, or limitations, or short of statutory right during the course of implementing the enabling legislation that directs the agency to issue exemption applications under specific circumstances and when it failed to render a decision on the SBTC's ELD Exemption Application, its Transportation Intermediary Broker Bond Exemption Application and its City of Midland HOS Exemption Application requests within the time period set forth in 49 U.S.C. § 31315(b)(7).

58.     The FMCSA abused its discretion and acted in excess of statutory jurisdiction, authority, or limitations, or short of statutory right when it failed to publish the SBTC's Transportation Intermediary Broker Bond Exemption Application and its City of Midland Hours of Service Exemption Application request in the Federal Register in accordance with 49 U.S.C. § 31315(b)(6) (A).

59.   As a result of FMCSA's failure to adhere to procedures required by law, the SBTC's members suffered a direct injury.

60.   The FMCSA should therefore be required to immediately grant or deny the SBTC's ELD Exemption Application request and publish that decision in the Federal Register pursuant to 5 U.S.C. § 706(2)(D).

61.   The FMCSA should therefore be required to immediately publish the SBTC's Transportation Intermediary Broker Bond Exemption Application and its Hours of Service Exemption Application request as to truck travel through the City of Midland, Texas in the Federal Register pursuant to 5 U.S.C. §706(2)(D).

## COUNT III

### Action Unlawfully Withheld Or Unreasonably Delayed

62.   Paragraphs 1 through 61 are incorporated herein by reference.

63.   The APA provides a general cause of action for parties adversely affected or aggrieved by agency action for which there is no adequate remedy in court. 5 U.S.C. § 702-704.

64.   Under the APA, a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

65.   The FMCSA unlawfully withheld or unreasonably delayed its decision on the SBTC's ELD Exemption Application request within the time period set forth in 49 U.S.C. § 31315(b)(7).

66.   The FMCSA unlawfully withheld or unreasonably delayed its publication the SBTC's Transportation Intermediary Broker Bond Exemption Application and its Hours of Service Exemption Application request in the Federal Register in accordance with 49 U.S.C. § 31315(b)(6) (A).

67.     As a result of FMCSA's failure to adhere to procedures required by law, the SBTC's members suffered a direct injury.

68.     The FMCSA should therefore be required to immediately grant or deny the SBTC's ELD Exemption Application request and publish that decision in the Federal Register pursuant to 5 U.S.C. § 706(2)(D).

69.     The FMCSA should therefore be required to immediately publish the SBTC's Transportation Intermediary Broker Bond Exemption Application and its Hours of Service Exemption Application request as to truck travel through the City of Midland, Texas in the Federal Register pursuant to 5 U.S.C. §706(2)(D).

## COUNT IV

### Purposeful Discrimination Against Members of a Lawful Organization Exercising their First Amendment Right to Petition the Government for Redress of Grievances.

70.     Paragraphs 1 through 69 are incorporated herein by reference.

71.     The First Amendment to the United States Constitution states:

> "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or **the right of the people to peaceably assemble, and to petition the Government for a redress of grievances."** (Emphasis added.)

72.     The Administrative Procedure Act5 U.S.C §702 provides that "a person suffering legal wrong because of agency action, or adversely affected of aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

73.     FMCSA has a duty as a federal agency to treat all organizations that petition it for redress with the attention and consideration of any petition submitted by an organization whose members are covered by and subject to FMCSA regulations.

74.    Time and time again, the FMCSA, through its agents and employees treats the Small Business in Transportation Coalition, and its 15,000 members differently than it treats other similarly situated trucking association, whose members are subject to FMCSA regulations.

75.    As a result of FMCSA's discriminatory actions against the SBTC and its members, SBTC members are not given the same opportunity to petition the FMCSA on issues and regulations that affect them as members of other similarly situated trucking associations.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays this Court to:

a. Declare the Defendants' failure to render a decision on the SBTC's ELD Exemption Application unlawful in violation of the APA and 49 U.S.C § 31315(b)(7);

b. Declare the Defendants' failure to publish the SBTC's Transportation Intermediary Broker Bond Exemption Application "upon receipt" an unlawful violation of the APA and 49 U.S.C. § 31315(b)(6)(A);

c. Declare the Defendants' failure to publish the SBTC's HOS Exemption Application "upon receipt" relating to the City of Midland Texas an unlawful in violation of the APA and 49 U.S.C. § 31315 (b)(6)(A);

d. Order the Defendants to render an immediate decision on the SBTC's ELD Exemption Application and publish that decision in the Federal Register pursuant to 49 U.S.C. § 31315(b)(7);

e. Order the Defendants to immediately publish the SBTC's Transportation Intermediary Broker Bond Exemption Application, engage in the notice and comment period, and render a decision within 180, pursuant to 49 U.S.C. § 31315(b)(6)(A);

f. Order the Defendants to immediately publish the SBTC's HOS Exemption Application as to interstate truck travel through the City of Midland, Texas in the Federal Register, engage in the notice and comment period, and render a decision within 180 days pursuant to 49 U.S.C. § 31315(b)(6)(A);

g. Enjoin the Defendants from further violating the APA, 49 U.S.C. § 31315(b)(6)(A) and 49 U.S.C. §31315(b)(7) by failing to publish in the Federal Register exemption applications "upon receipt," failing to commence the required notice and comment period through publication in the Federal Register, and failing to render decisions on said applications within 180 days.

h. Enjoin the Defendants from discriminating against SBTC and its members, and order Defendants to give SBTC and its members the same level of access to petition the FMCSA on issues and regulations that affect them and equal protection of the law. Award all costs and expenses of bringing this action, including attorneys' fees and costs; and

i. Grant any other relief this court deems just and proper.

Respectfully submitted,

/s/ Laurence L. Socci
Law Office of Laurence L. Socci
(D.C. Bar #241318)
7903 Flamingo Dr.
Alexandria, VA 22306
(202) 262-5843
laurence.socci@dc-lawyer.us
*Attorney for Plaintiff*





**Small Business in Transportation Coalition**

August 9, 2019

Via Express U.S. Mail & Email
Attachments by Hardcopy Only

The Honorable Raymond Martinez, Administrator
Federal Motor Carrier Safety Administration
1200 New Jersey Avenue SE
Washington, DC 20590

**Re: Docket No. FMCSA-2018-0180; RESUBMISSION OF ELD EXEMPTION APPLICATION PURSUANT TO 49 U.S. Code § 31315(b)(3) & 49 CFR 381.317; REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315**

Dear Mr. Martinez,

Pursuant to 49 U.S. Code § 31315(b)(3) and 49 CFR 381.317, the Small Business in Transportation Coalition hereby **resubmits** to you --pursuant to your authority delegated by the Secretary of Transportation --its ELD Exemption Application in the matter of Docket No. FMCSA-2018-0180. We offer this letter, which we contend "reasonably address(es) the reasons for denial." We hereby request reconsideration of said denial.

**Background**

The SBTC first submitted its ELD Exemption Application on November 20, 2017 (Exhibit A). FMCSA rejected said application, without publication in the Federal Register, by letter of January 5, 2018 (Exhibit B) stating our original submission did not conform to the requirements of 49 CFR 381.310. Thereafter, SBTC resubmitted the application on February 1, 2018 (Exhibit C) addressing the requirements that call for carrier-specific information as best it could; SBTC noticed FMCSA that it is unreasonable to expect that a trade group filing a class exemption can address all aspects of these procedural requirements. We note SBTC even went as far as to petition the FMCSA for rulemaking on this issue thereafter on June 8, 2018 (Exhibit D) asking for the agency to promulgate rules for the submission of class exemptions; that the FMCSA on its website, pursuant to its FAST Act obligations, recorded receipt of this application as of June 14, 2018 (Exhibit E); but noted, strangely, that a response to SBTC acknowledging receipt was "N/A" in this instance despite FAST Act requirements to the contrary.

*EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315*

**The Honorable Raymond Martinez**

**August 9, 2019**

**Page 2 of 11**

We contend that by publishing the application in the <u>Federal Register</u> thereafter on June 5, 2018--rather than return the application again, the FMCSA **conceded** that we had substantially complied with 49 CFR 381.310, to the extent that such compliance is possible, given the fact that we are a trade group submitting a class exemption and the rule is clearly geared toward individual drivers/carriers.

We request these documents all be incorporated into this application by reference, including, but not limited to, the original request for the exemption.

**Federal Lawsuit**

SBTC filed a Federal Lawsuit <u>SMALL BUSINESS IN TRANSPORTATION COALITION v. U.S. DEPARTMENT OF TRANSPORTATION et al</u> in District of Columbia District Court (1:2019cv01311) on May 6, 2019 seeking the Court to compel agency action on the ELD Exemption Application after more than twice the 180 day period Congress requires FMCSA to decide on these matters had elapsed. Thereafter, FMCSA finally ruled on this matter on July 17, 2019, we contend, haphazardly. We note a competitor trade group's (OOIDA) application filed one day after ours on November 21, 2017 was processed by the agency within 180 days.

**The FMCSA Decision**

*"For the reasons given below, FMCSA denies the SBTC application for exemption. The SBTC application does not meet the regulatory standards for an exemption. SBTC failed to provide "[t]he name of the individual or motor carrier that would be responsible for the use or operation of CMVs" under the exemption [49 CFR 381.310(b)(2)]. SBTC did not provide the name of a single motor carrier. SBTC failed to "[p]rovide[] an estimate of the total number of drivers and CMVs that would be operated under the terms and conditions of the exemption" [§ 381.310(c)(3)]. Instead, SBTC said "we defer to FMCSA to determine the total number of drivers and CMVs that would be operated under the exemption." SBTC failed to "[e]xplain[] how you would ensure that you could achieve a level of safety that is equivalent to, or greater than, the level of safety that would be obtained by complying with the regulation" [§ 381.310(c)(5)]. The application said "we believe the level of safety is already assured by the pre-existing Hours of Service rule as opposed to this ELD enforcement mechanism rule.*

*EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315*

**The Honorable Raymond Martinez**

**August 9, 2019**

**Page 3 of 11**

*Nor did SBTC meet the statutory requirement in 49 U.S.C. 31315(b)(5)(D) to describe "[t]he specific countermeasures the person would undertake to ensure an equivalent or greater level of safety than would be achieved absent the requested exemption." SBTC proposed no countermeasures at all.*

*For all of these reasons, FMCSA denies SBTC's request for exemption."*

<u>**Comes Now, SBTC to 'Reasonably Address the Reasons for Denial'**</u>

**FMCSA Claim One: "The SBTC application does not meet the regulatory standards for an exemption. SBTC failed to provide "[t]he name of the individual or motor carrier that would be responsible for the use or operation of CMVs" under the exemption [49 CFR 381.310(b)(2)]. SBTC did not provide the name of a single motor carrier."**

<u>SBTC Response to FMCSA Claim One:</u> As previously stated herein, this issue was previously invoked by the agency in its January 5, 2018 rejection letter; SBTC responded to this issue in its February 1, 2018 supplement to its November 20, 2017 application; FMCSA conceded that SBTC had addressed this matter as the application was thereafter deemed worthy of publication in the <u>Federal Register.</u> Had this still been a bona fide issue for FMCSA, FMCSA would have rejected the application yet again. FMCSA's claim, here, neglects to acknowledge the fact that this is an application for a **class exemption...** that FMCSA has **failed** to promulgate procedural rules for the submission of class exemptions such as this one applied for by a **trade group**, and that the name of a specific motor carrier is not applicable to class exemptions submitted by trade groups. The agency is holding apples accountable for rules set for oranges.

FMCSA is simply misguided in relying on a regulation grounded in a statute that deals with its authority to issue individual drivers' hearing and vision type applications for exemption. Class exemptions are not the same as individual exemptions. The law recognizes that not all exemption applications are the same and specifically makes this distinction by references class exemptions. FMCSA never promulgated such regulations for this category of regulations and it is trying to make the glove fit an oversized hand.

*EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315*

**The Honorable Raymond Martinez**

**August 9, 2019**

**Page 4 of 11**

This response as a basis to reject our application by FMCSA is arbitrary and capricious, frustrates what should be a legitimate application process, and suggests that a trade group may **never** submit a class exemption application under the agency's rules because it is not an individual motor carrier. This response is also discriminatory as this requirement was not imposed upon OOIDA in the matter of their ELD Class Exemption Application that, again, was filed on November 21, 2017, the day after we submitted ours.[1] SBTC has properly identified and defined the class in terms of all interstate motor carriers with 50 or less employees.[2] In pointing this out, SBTC has already reasonably addressed this point.

***FMCSA Claim Two: SBTC failed to "[p]rovide[] an estimate of the total number of drivers and CMVs that would be operated under the terms and conditions of the exemption" [§ 381.310(c)(3)]. Instead, SBTC said "we defer to FMCSA to determine the total number of drivers and CMVs that would be operated under the exemption."***

<u>SBTC Response to FMCSA Claim Two:</u> As indicated in our original application, because this is not an application by a single carrier that would know the number of employee drivers it has, but a **trade group.** SBTC properly deferred to the agency, which is the custodian of MCS-150 industry data. SBTC as a trade group does not possess these data and cannot possibly be expected to furnish same as a condition for approval.

Even if SBTC filed a FOIA request for said data in November of 2017, FMCSA does not process such requests in a timely manner. For instance, the undersigned is still waiting as of mid-2019 for the agency to respond to a FOIA request submitted in 2016. It is unreasonable to expect SBTC to furnish such industry-wide data known only to the agency; again, this rule is intended to apply to an individual carrier that would have access to its own employee numbers and it is wrongly being misapplied here.

---

[1] FMCSA decided the OOIDA application within 180 days as required by law. Our application went more than a year without a decision necessitating the filing of a Federal Lawsuit in May 2019 to compel agency action. This decision was nothing more than a shoddy attempt to posture in defense of that suit and show compliance with the law to a Federal Judge. SBTC believes but not for that lawsuit, this matter would still be pending.

[2] "Employees" was thereafter clarified in a meeting between SBTC Lobbyist Laurence Socci and Associate Administrator Larry Minor to mean Driver employees during the pendency of this proceeding.

**EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315**

**The Honorable Raymond Martinez**

**August 9, 2019**

**Page 5 of 11**

Furthermore, FMCSA's own rulemaking record shows it already possesses and is well aware of these types of data. As indicated in Exhibit A, on December 16, 2015, FMCSA referenced the steps it had taken to minimize adverse economic impacts on small entities (see: https://www.gpo.gov/fdsys/pkg/FR-2015-12-16/pdf/2015-31336.pdf). As we noted in our original application, a reading of the FMCSA analysis suggests that FMCSA has essentially ignored and disregarded the impact of the ELD rule on the smallest of industry players in an overbroad assessment that places one-man interstate owner-operators into the same category as other "small businesses" within the trucking industry. For instance, in referencing North American Industry Classification System ("NAICS") codes 484110 through 484230 (Freight Trucking), the FMCSA makes no distinction whatsoever between businesses with annual revenues of $27.5 million and mere one-man operators of commercial motor vehicles. That is, FMCSA stated:

*"Of the population of motor carriers that FMCSA regulates, 99 percent are considered small entities under SBA's definition. Because small businesses constitute a large part of the demographic the Agency regulates, providing exemptions to small business to permit noncompliance with safety regulations is not feasible and not consistent with good public policy. The safe operation of CMVs on the Nation's highways depends on compliance with all of FMCSA's safety regulations. Accordingly, the Agency will not allow any motor carriers to be exempt from coverage of the rule based solely on a status as a small entity. Furthermore, exempting small businesses from coverage would be inconsistent with the explicit statutory mandate contained in MAP–21."*

Notwithstanding passenger carriers, we note here that truckinfo.net (https://www.truckinfo.net/trucking/stats.htm) estimates that there are 1.2 million trucking companies in the U.S. and of that figure, 97% operate 20 or fewer trucks, while 90% operate 6 or fewer trucks. We could extrapolate from this to infer numbers of drivers. However, we are not aware of exact statistics that estimate how many companies operate with 50 of fewer drivers per se. Logic would dictate that it is probably somewhere in between the 97% referred to by truckinfo.net and the 99% put forth by FMCSA above. But that still does not address "total number of drivers and CMVs." How many drivers work for carriers between 20 trucks and 50 trucks remain an FMCSA secret FMCSA does not seem willing to share. Just because a carrier has, say, only one truck, does not necessarily mean it does not have more than one driver.

*EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315*

**The Honorable Raymond Martinez**

**August 9, 2019**

**Page 6 of 11**

This response as a basis to reject our application by FMCSA is also arbitrary and capricious, frustrates what should be a legitimate application process, and suggests that a trade group may **never** submit a class exemption application because it is not an individual motor carrier and does not have unfettered access to exact wide-spread industry data in the custody and control of FMCSA. This response is also discriminatory as this rule was not imposed upon OOIDA in the matter of their ELD Class Exemption Application that was filed on November 21, 2017, the day after we submitted ours.

Nonetheless, SBTC believes that it has now further identified the percentage of carriers that would be affected by the class exemption herein. But we do not know of a way to accurately extrapolate the number of drivers that would be impacted by this class exemption from the estimated 3.5 million truck drivers in the United States, without further data in the custody and control of FMCSA and we again defer to FMCSA to assess the "total number of drivers and CMVs" as it usually does when engaging in rulemaking." In pointing this out, SBTC has reasonably addressed this point.

**FMCSA Claim Three: SBTC failed to "[e]xplain[] how you would ensure that you could achieve a level of safety that is equivalent to, or greater than, the level of safety that would be obtained by complying with the regulation" [§ 381.310(c)(5)]. The application said "we believe the level of safety is already assured by the pre-existing Hours of Service rule as opposed to this ELD enforcement mechanism rule."**

SBTC Response to FMCSA Claim Three: Again, this claim places the onus on "you" as in 'you individual carrier, you,' as opposed to a 501(c)(6) trade group acting on behalf of its constituency.

However, we will offer information that we have already supplied the agency elsewhere that was not previously attached to our application that we believe shows that ELDs have caused reckless speeding and pose national security threats that are resulting consequences contrary to the agency's mission and Congressional mandate to ensure public safety.

**EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315**

**The Honorable Raymond Martinez**

**August 9, 2019**

**Page 7 of 11**

SBTC contends FMCSA must look carefully at the unintended consequences of the ELD rule when deciding whether or not to grant the exemption. We would suggest FMCSA should grant the exemption at least temporarily if for no other reason than to press the pause button while it studies these unintended consequences and their adverse effects on safety. We contend this would indeed achieve a greater level of overall safety than the current status quo. Our previous pleas to the agency to this effect have fallen upon deaf ears. We ask the agency to lend us their ears now.

The true problem, here, is that the biggest carriers in the industry pay drivers by the mile and the agency governs driving by the clock. We offer the attached articles, comment, and poll results (Exhibit F), which assert that FMCSA should address the underlying premise that has caused some drivers to cheat on paper logs in the past and/or recklessly speed. And we suggest that even if speed governors are enacted as a matter of law or regulation, this will not address the problem of speeding in school and construction zones. Regulation is not the real answer to the safety problems of driver fatigue and speeding. A paradigm shift in the method of driver compensation is.

The relentless tightening of the noose on drivers with ELDs and speed limiters to the degree that they are overly stressed about the ability to make money and feed their families is simply not in the public interest. It causes drivers to act **erratically** due to **emotional distress**, which translates into such drivers being a downright nervous wreck menace on the road, and we believe it adversely affects industry's already-abysmal retention rates. This is neither in accordance with the National Transportation Policy nor in the best economic interest of consumers dependant on a healthy supply chain nor public safety.

We also point to the **national security** threat in Exhibit F posed by telematic devices.

**FMCSA Claim Four: Nor did SBTC meet the statutory requirement in 49 U.S.C. 31315(b)(5)(D) to describe "[t]he specific countermeasures the person would undertake to ensure an equivalent or greater level of safety than would be achieved absent the requested exemption." SBTC proposed no countermeasures at all.**

*EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315*

**The Honorable Raymond Martinez**

**August 9, 2019**

**Page 8 of 11**

SBTC Response to FMCSA Claim Four: This is simply false and leaves us wondering if the decision-maker even read our application or if it was merely rubber-stamped. SBTC suggested a return to paper logs as a countermeasure. We echo that countermeasure here.

Paper logs were deemed sufficient to ensure adequate levels of safety for generations, more than 80 years. And the FMCSA has already issued numerous exemptions that require carriers to revert to tracking their hours of service using paper logs in lieu of ELDs; specifically, in the area of transportation of livestock. To suggest that it is somehow "safe" for transporters of pigs to revert back to paper logs, but it is not safe for transporters of general commodities to use paper logs as a countermeasure simply defies logic. The commodity does not dictate what is safe. What's good for the goose…

The fact that FMCSA missed this countermeasure in our application proves our point that this application was issued in haste despite the enormous amount of time that passed since it was filed and that it was not given due consideration; obviously, this application and the comments in support (over 90% of nearly 2,000 comments filed) were simply skimmed over and this application was arbitrarily denied on a whim contrary to the spirit of the Administrative Procedure Act and Administrative Law.

It is clear that after failing to issue a determination all this time, nearly a year after the 180 day processing deadline expired, the only reason this denial was hurriedly issued was to report that FMCSA finally complied with the law to a Federal Judge.

**FMCSA Decision Failed to Give Due Consideration and Failed to Address Matters Required to be Addressed by Law**

FMCSA's decision fails to address its own statutory obligations under 49 USC 13541, the actual applicable statute here, to show we are wrong when we assert that the ELD rule is not necessary to carry out the transportation policy of section 13101; is not needed to protect shippers from the abuse of market power or that the transaction or service is of limited scope; and that the exemption is in the public interest. On that last item, we have repeatedly asserted that ELDs have caused excessive speeding, which results in far more deaths ELDs would ever save by combating fatigue.

**EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315**

**The Honorable Raymond Martinez**

**August 9, 2019**

**Page 9 of 11**

Absent such a showing, the law actually requires FMCSA to issue the exemption given the word "shall" in the enabling statute. As you have made no showing to the contrary, we contend you **must** issue the exemption as a matter of law.

**Resubmission Process**

FMCSA has promulgated a rule which affords an applicant the right to resubmit an exemption application if denied:

*§ 381.317 May I resubmit my application for exemption if it is denied?*

*If the Administrator denies your application for exemption and you can reasonably address the reasons for denial, you may resubmit your application following the procedures in § 381.310.*

This rule essentially restarts the application process as per the reference to *§ 381.310, which then invokes, § 381.315(a).*

*§ 381.315 What will the FMCSA do after the agency receives my application for an exemption?*

*(a) The Federal Motor Carrier Safety Administration will review your application and prepare, for the Administrator's signature, a Federal Register notice requesting public comment on your application for an exemption. The notice will give the public an opportunity to review your request and your safety assessment or analysis (required by § 381.310) and any other relevant information known to the agency.*

This rule therefore requires FMCSA to now republish this application in the <u>Federal Register</u> **and again open this matter up for public notice and comment.**

Furthermore, Federal Law codified at 49 U.S. Code § 31315(b)(6) also requires FMCSA to now publish the application in the <u>Federal Register</u> "upon receipt:"

*(6)Notice and comment.—*

*(A)Upon receipt of a request.—*

**EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315**

**The Honorable Raymond Martinez**

**August 9, 2019**

**Page 10 of 11**

*Upon receipt of an exemption request, the Secretary **shall** publish in the Federal Register (or, in the case of a request for an exemption from the physical qualification standards for commercial motor vehicle drivers, post on a web site established by the Secretary to implement the requirements of section 31149) a notice explaining the request that has been filed and shall give the public an opportunity to inspect the safety analysis and any other relevant information known to the Secretary and to comment on the request. This subparagraph does not require the release of information protected by law from public disclosure (emphasis added).*

And, the statute requires FMCSA to rule on the application within 180 days:

*49 U.S. Code § 31315(b)((7)Applications to be dealt with promptly.—*

*The Secretary shall grant or deny an exemption request after a thorough review of its safety implications, but in no case later than 180 days after the filing date of such request.*

SBTC therefore requests that FMCSA process this resubmitted application in accordance with the law.

**Court Supervision**

As FMCSA has a history and pattern of failing to publish the SBTC's applications for exemptions in the <u>Federal Register</u> "upon receipt" as is required by Federal Law on two prior occasions, and the SBTC is currently suing FMCSA in Federal Court over FMCSA's failure to comply with the aforementioned statute, SBTC intends to request court supervision over this process to ensure FMCSA complies with procedural requirements of the aforementioned statute.

In closing, FMCSA clearly failed to afford us the diligent consideration that was due. FMCSA has maliciously and unethically relied on the same rule it used to kick back our November 20, 2017 submission; its reliance on this rule is specious and misguided at best. FMCSA either knows --or should know --a trade group cannot possible comply with a rule that pertains to individual drivers and carriers.

*EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315*

**The Honorable Raymond Martinez**

**August 9, 2019**

**Page 11 of 11**

And FMCSA alone bears the responsibility for its failure to promulgate rules for class exemptions as previously directed by Congress. It cannot now transfer and project responsibility for its failure to do so onto the SBTC with impunity.

Lastly, we offer the attached January 2018 letter from FMCSA to SBA (Exhibit G), which was written in response to our complaint to SBA, which shows the agency was in fact pre-disposed to denying our application before it ever even published it in the <u>Federal Register</u> and opened it up for comment. That is, we were summarily dismissed before the proceeding ever began, making this whole proceeding, including the collection of nearly 2,000 comments from industry, one big misleading sham. This letter shows the agency fraudulently led the industry to believe it would listen to their comments if they took the time to write in, when in fact this matter was decided way before the first person filed a comment. In other words, this whole process was rigged from the onset.

In summary, the SBTC finds the FMCSA's handling of its ELD exemption application... from start to finish... totally and absolutely corrupt in each and every respect. Clearly, a fair and impartial "do-over" is warranted in this instance, one which results in the granting of the application to make the industry whole and properly reconciles the principles of public safety, national security, productivity and justice.

Sincerely,


/s/JAMES LAMB, President

Small Business in Transportation Coalition ("SBTC")

<u>www.Truckers.com</u>





EXHIBIT
B

September 10, 2019                    Via Express U.S. Mail & Email
                                     Attachments by Hardcopy Only

The Honorable Raymond Martinez, Administrator
Federal Motor Carrier Safety Administration
1200 New Jersey Avenue SE
Washington, DC 20590

**Re: Docket No. FMCSA-2013-0513; <u>RESUBMISSION</u> OF TRANSPORTATION INTERMEDIARY BOND EXEMPTION APPLICATION PURSUANT TO 49 U.S. Code § 31315(b)(3) & 49 CFR 381.317; REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315**

Dear Mr. Martinez,

Pursuant to 49 U.S. Code § 31315(b)(3) and 49 CFR 381.317, the Small Business in Transportation Coalition ("SBTC") hereby **resubmits** to you --pursuant to your authority delegated by the Secretary of Transportation –the Association of Independent Property Brokers & Agents' ("AIPBA") Broker Bond Exemption Application[1] in the matter of Docket No. FMCSA-2013-0513. We offer this letter, which we contend "reasonably address(es) the reasons for denial." We hereby request reconsideration of said denial.

**Background**

The AIPBA submitted its Exemption Application on August 14, 2013 incorporated here by reference (Exhibit A)[2]. FMCSA denied said application through a late decision[3]

---

[1] The AIPBA small broker group merged with the broader SBTC small carrier, trucker and broker group in 2016.
[2] We note here FMCSA did not hold AIPBA accountable for compliance with 49 CFR 381.310 on this class exemption application as it did SBTC on the ELD class exemption application (Docket No. FMCSA-2018-0180) and accepted the application without the carrier-specific details required by 49 CFR 381.310.
[3] Although FMCSA is required by Federal Law to rule on exemption applications within 180 days, which, in this case, was mid-February of 2014, FMCSA issued the decision more than one year late at the end of March 2015 despite there being a mere 81 comments in the docket to review: "49 U.S. Code § 31315(b)((7)Applications to be dealt with promptly.— The Secretary shall grant or deny an exemption request after a thorough review of its safety implications, but in no case later than 180 days after the filing date of such request."

*EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315*

**The Honorable Raymond Martinez**

**September 10, 2019**

**Page 2 of 16**

published in the <u>Federal Register</u> on March 31, 2015 (Exhibit B) stating: (1) *"49 U.S.C.13541 does not give FMCSA the authority to essentially nullify a statutory provision by exempting the entire class of persons subject to the provision;"* and (2) even if it did have the lawful authority:

> *"AIPBA's exemption application does not meet the factors provided in section 13541 because (1) the new $75,000 bond requirement is necessary to carry out the National Transportation Policy at 49 U.S.C.13101, (2) there has been no showing that the $75,000 requirement "is not needed to protect shippers from the abuse of market power" and (3) the requested exemption is not in the public interest."*

Congress raised the broker bond through the <u>Moving Ahead for Progress in the 21st Century Act </u>("MAP-21") from $10,000 to $75,000, which forced 40% of the industry at the time out-of-business in December of 2013 and directed FMCSA to report to Congress every four years on the impact of that new $75,000 bond by assessing the "appropriateness" of this bond amount.

Twice now in 2014[4] and again in 2018[5], the agency has skirted this issue in its reports to Congress, suggesting the agency's understanding is that no one in the industry really cares about the broker bond anymore and that somehow alleviates their responsibility to comply with a Congressional mandate and report on the appropriateness of the $75,000 amount. Here is the exact provision FMCSA is unlawfully disregarding:

> *"SEC. 32104. FINANCIAL RESPONSIBILITY REQUIREMENTS. Not later than 6 months after the date of enactment of this Act, and every 4 years thereafter, the Secretary shall— (1) issue a report on the appropriateness of— (A) the current minimum financial responsibility requirements under sections 31138 and 31139 of title 49, United States Code; and (B) the current bond and insurance requirements under sections 13904(f), 13903, and 13906 of title 49, United States Code; and (2) submit the report issued under*

---

[4] https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/Financial-Responsibility-Requirements-Report-Enclosure-FINAL-April%202014.pdf

[5] https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/mission/policy/397671/financial-responsibilityreport-final-march-2018.pdf

*EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315*

**The Honorable Raymond Martinez**

**September 10, 2019**

**Page 3 of 16**

> *paragraph (1) to the Committee on Commerce, Science, and Transportation of the Senate and the Committee on Transportation and Infrastructure of the House of Representatives."*

As pointed out by AIPBA, we note here that during previous 2010 household goods broker bond rulemaking, the agency concluded bonds over $25,000 would have "anti-competitive" effects that would adversely affect small businesses.[6]

**Since the broker bond was raised to $75,000 in December of 2013, formally licensed brokers have continued to operate unlawfully without a license and bond by simply calling themselves "dispatchers" or "dispatch services" with impunity.**

SBTC therefore petitioned FMCSA on October 4, 2018 (Exhibit C) to change the regulatory definition of broker in the hopes FMCSA will enforce unlawful property brokerage activities. FMCSA has indicated it plans to entertain our request but has undertaken taken no such rulemaking to date.[7]

SBTC believes this clarification is necessary before it can engage in private causes of action against unlicensed entities that are unlawfully arranging for motor carrier transportation, which are authorized by MAP-21.

**Federal Lawsuit**

SBTC filed a Federal Lawsuit <u>SMALL BUSINESS IN TRANSPORTATION COALITION v. U.S. DEPARTMENT OF TRANSPORTATION et al</u> in District of Columbia District Court (1:2019cv01311) on May 6, 2019 seeking the Court to compel agency action on two other exemption applications. This third SBTC exemption application relates to this

---

[6] Docket No. FMCSA-2004-17008; https://www.federalregister.gov/documents/2010/11/29/2010-29813/brokers-of-household-goods-transportation-by-motor-vehicle

[7] It is well established that a failure to act on a petition for rulemaking is a discrete agency action subject to judicial review if unreasonably delayed. See, e.g., In re Am. Rivers & Idaho Rivers United, 372 F.3d 413, 418 (D.C. Cir. 2004) (holding that agency was obliged by the APA to respond to regulatory petitions, even for a discretionary action, within a reasonable time); see generally Jason A. Schwartz & Richard L. Revesz, Petitions for Rulemaking: Final Report to the Administrative Conference of the United States15–17 (Nov. 5, 2014), https://www.acus.gov/report/petitions-rulemaking-final-report ("[C]ourts have nearly unanimously found that agency responses (or lack thereof) to petitions for rulemakings are reviewable under the APA.") (citing 5 U.S.C. §§ 701–706).

*EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315*

**The Honorable Raymond Martinez**

**September 10, 2019**

**Page 4 of 16**

lawsuit insofar as SBTC has already experienced three unlawful delays in the publication of its exemption applications in the Federal Register during the past two years.

### SBTC's Interest in the AIPBA Application for Exemption
### On behalf of its small broker members:

Under the current regulatory climate, unlicensed entities, including motor carriers and dispatch services, are permitted to engage in unfair competition because FMCSA has not enforced the broker licensing requirement and has allowed unlicensed entities arranging for transportation to operate with impunity. FMCSA promised to crack down on unlawful operations through a "comprehensive enforcement program" on September 5, 2013[8], six years ago as of last week but has failed to make good on this promise.

We are therefore now asking for all small property brokers and freight forwarders as defined by the SBA for freight transportation arrangement (NAICS code 488510[9]) with revenues under $15 million be made exempt for 5 years to give FMCSA more time to develop its "comprehensive enforcement program" to enforce the licensing and bonding requirement.

### On behalf of its small carrier and owner-operator members:

During the Great Recession of 2017-2018, many of SBTC's small carriers and owner-operator members survived this difficult time by securing a broker license and brokering freight to themselves and outsource to other carriers. This enabled them to 'cut out the middle man.' The raising of the property broker bond to $75,000 effectively eliminated this revenue-enhancement mechanism and forced small carriers and owner-operators to work with the large brokers represented by the Transportation Intermediaries Association (TIA).[10]

---

8

https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/Federal_Register_Notice_Registration_and_Financial_Security_Requirements_for_Brokers_of_Property_and_Freight_Forwardres_508CLN.pdf

9 https://www.sba.gov/sites/default/files/Size_Standards_Table.pdf

10 Talk of "consolidating" the brokerage industry dates back to 2011. TIA effectively lobbied for the higher bond which had the effect of smaller brokers having to become agents of larger brokers. AIPBA complained to FTC and DOJ (https://www.linkedin.com/pulse/20140818121952-21695323-the-aipba-collusion-complaint) about TIA's lobbying on antitrust grounds, citing the sham exemption to the Noerr-Pennington Doctrine (i.e. raising the bond

*EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315*

**The Honorable Raymond Martinez**

**September 10, 2019**

**Page 5 of 16**

With fears of yet another recession on the horizon, now is the time for FMCSA to grant this exemption as it is in the public interest to ensure an uninterrupted supply chain.

Despite arguments made by other trucker-only and carrier-only trade groups which refuse to look at the big picture and think outside the box, we made a pitch for lowering the bond to our small carrier and owner operator members (Exhibit D) so they are not reliant on –and at the mercy of-- big brokers. Rather than have no choice but to secure loads from large brokers, SBTC believes that small carriers should have the right to add small brokerage components to their existing operations. The current bond level impedes this.

## Comes Now, SBTC to 'Reasonably Address the Reasons for Denial'
**FMCSA Claim One:** "49 U.S.C.13541 does not give FMCSA the authority to essentially nullify a statutory provision by exempting the entire class of persons subject to the provision;

SBTC Response to FMCSA Claim One:
We understand the agency's position on this matter. In reconciling one statute MAP-21, against another, 49 U.S.C. 13541, we understand FMCSA adopted the position that MAP-21 prevents FMCSA from approving a **blanket** class exemption application for all brokers and forwarders under the theory "The Constitution does not authorize members of the executive branch to enact, amend, or repeal statutes." {citing Terran v. Secretary of Health and Human Services, 195 F.3d 1302, 1312 (Fed. Cir. 1999)}.

But we ask the agency to acknowledge the fact that Congress has passed enabling legislation to grant not only individual exemptions, but specifically, **class** exemptions in non-blanket instances.

> *(a) In General.—In any matter subject to jurisdiction under this part, the Secretary or the Board, as applicable, shall exempt a person, **class of persons**, or a transaction or service from the application, in whole or in part, of a provision of this part, or use this exemption authority to modify the application of a*

---

was not about fighting fraud as TIA suddenly purported, but in furtherance of the consolidation scheme to create an oligopoly and fight competition. FTC passed on pursuing the matter and DOJ began a "review." FMCSA then maliciously asked FTC to make a case against the undersigned's private business activity, who was then-President of AIPBA, in retaliation for two lawsuits AIPBA brought against FMCSA over the $75,000 bond requirement.

*EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315*

**The Honorable Raymond Martinez**

**September 10, 2019**

**Page 6 of 16**

> *provision of this part as it applies to such person, class, transaction, or service, when the Secretary or Board finds that the application of that provision—*
> *(1) is not necessary to carry out the transportation policy of section 13101;*
> *(2) is not needed to protect shippers from the abuse of market power or that the transaction or service is of limited scope; and*
> *(3) is in the public interest (emphasis added).*

In looking at the MAP-21 statute, we note Congress does not expressly remove said exemption authority on the matter of the broker/forwarder bond. Had Congress intended to restrict the agency from issuing class exemptions from the $75,000 intermediary bond, it would have added specific language to that effect to the law. But it did not. MAP-21 states with respect to property brokers:

> *Minimum financial security.--Each broker subject to the requirements of this section shall provide financial security of $75,000 for purposes of this subsection, regardless of the number of branch offices or sales agents of the broker.*

And with respect to freight forwarders:

> *Minimum financial security.--Each freight forwarder subject to the requirements of this section shall provide financial security of $75,000, regardless of the number of branch offices or sales agents of the freight forwarder.*

So, we are left with the fact that Congress does afford the agency the flexibility to grant class exemptions to some extent.

The only actual restriction in place deals with insurance and bonds are not insurance. AIPBA articulated this in its original application and addresses this again in our conclusion.

SBTC contends the whole purpose of having regulatory agency engage in rulemaking and be given discretion by Congress to grant such exemptions from its rules is to rely on an agency's specialized knowledge, insight and expertise in a given field like transportation. Again, FMCSA showed it possesses such specialized knowledge, insight

*EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315*

**The Honorable Raymond Martinez**

**September 10, 2019**

**Page 7 of 16**

and expertise when it suggested that bonds over $25,000 would have anti-competitive effects that would adversely affect small businesses in 2010.

SBTC has therefore showed that Congress has in fact passed enabling legislation allowing agencies to grant waivers and exemptions, including class exemptions and FMCSA has class exemption authority to address the current request.

Furthermore, since FMCSA denied this exemption, the Administrative Conference of the United States ("ACUS"), an independent federal agency charged with convening expert representatives from the public and private sectors to recommend improvements to administrative process and procedure, has issued the following guidelines on how an agency should address requests for exemptions.[11]

**ACUS Recommendation 2017-7 adopted on December 15, 2017, states:**

*Individuals and entities regulated by federal agencies must adhere to program-specific requirements prescribed by statute or regulation. Sometimes, however, agencies prospectively excuse individuals or entities from statutory or regulatory requirements through waivers or exemptions.[1] The authority to waive or exempt regulated parties from specific legal requirements affords agencies much-needed flexibility to respond to situations in which generally applicable laws are a poor fit for a given situation.[2] Emergencies or other unforeseen circumstances may also render compliance with statutory or regulatory requirements impossible or impracticable.[3] In such instances, requiring strict adherence to legal requirements may not be desirable.[4] This is particularly true when the recipient of a waiver or exemption demonstrates that it intends to engage in conduct that will otherwise further the agency's legitimate goals.*

*Yet, waiving or exempting a regulated party from a statutory or regulatory requirement also raises important questions about predictability, fairness, and protection of the public. For instance, when an agency decides to waive legal requirements for some but not all regulated parties, the decision to grant a waiver or exemption may create the appearance—or perhaps even reality—of irregularity, bias, or unfairness. Waiving or exempting a regulated party from a legal requirement, therefore, demands that agencies simultaneously consider regulatory flexibility, on the one hand, and consistent, non-arbitrary administration of the law, on the other.*

---

[11] https://www.acus.gov/recommendation/regulatory-waivers-and-exemptions

*EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL*
*REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315*

**The Honorable Raymond Martinez**

**September 10, 2019**

**Page 8 of 16**

*Agencies' authority to waive or exempt regulated parties from legal requirements may
also intersect with other principles of administrative law.  When agencies frequently
issue waivers or exemptions because a regulation is outdated or ineffective, for
example, amending or rescinding the regulation may be more appropriate in some
circumstances, despite the necessary resource costs.[5]  Such revisions can enhance
efficiency and transparency.  The requisite notice-and-comment procedures can also
foster public participation and informed decision making.*

*The following recommendations offer best practices and factors for agencies to consider
regarding their waiver and exemption practices and procedures.  They are not intended
to disturb or otherwise limit agencies' broad discretion to elect how to best use their
limited resources.*

### RECOMMENDATION

#### Scope of Waiver and Exemption Authority

*1.     When permitted by law, agencies should consider creating mechanisms that would
allow regulated parties to apply for waivers or exemptions by demonstrating conduct that
will achieve the same purpose as full compliance with the relevant statutory or regulatory
requirement.*

*2.     When consistent with the statutory scheme, agencies should endeavor to draft
regulations so that waivers and exemptions will not be routinely necessary.  When an
agency has approved a large number of similar waivers or exemptions, the agency
should consider revising the regulation accordingly. If eliminating the need for waivers or
exemptions requires statutory reform, Congress should consider appropriate legislation.*

*Exercising Waiver or Exemption Authority*

*3.     Agencies should endeavor, to the extent practicable, to establish standards and
procedures for seeking and approving waivers and exemptions.*

*4.     Agencies should apply the same treatment to similarly situated parties when
approving waivers and exemptions, absent extenuating circumstances.*

*5.     Agencies should clearly announce the duration, even if indefinite, over which a
waiver or exemption extends.*

*Transparency and Public Input in Seeking and Approving Waivers and Exemptions*

*6.     Agencies should consider soliciting public comments before establishing standards
and procedures for seeking and approving waivers and exemptions.*

*EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315*

**The Honorable Raymond Martinez**

**September 10, 2019**

**Page 9 of 16**

7.     *Agencies should endeavor, to the extent practicable, to make standards and procedures for seeking and approving waivers and exemptions available to the public.*

8.     *Agencies should consider soliciting public comments before approving waivers or exemptions.*

9.     *Agencies should provide written explanations for individual waiver or exemption decisions and make them publicly available to the extent practicable and consistent with legal or policy concerns, such as privacy.  Further, agencies should consider providing written explanations of representative instances to help illustrate the types of activities likely to qualify for a waiver or exemption.*

[1] *Agencies may also retrospectively decline to bring an enforcement action once a legal violation has already occurred.  This recommendation, however, is confined to the agency practice of prospectively waiving or exempting regulated parties from legal requirements.*

[2] *The terms "waiver" and "exemption" carry various meanings in agency practice.  For the purposes of this recommendation, when Congress has expressly authorized an agency to excuse a regulated party from a legal requirement, the term "waiver" is used.  If an agency is implicitly authorized by Congress to excuse a regulated party from a legal requirement, "exemption" is used.  These definitions stem from the report underlying this recommendation.  See Aaron L. Nielson, Waivers, Exemptions, and Prosecutorial Discretion: An Examination of Agency Nonenforcement Practices (Nov. 1, 2017) (report to the Admin. Conf. of the U.S.), https://acus.gov/report/regulatory-waivers-and-exemptions-final-report.  Some agencies may also derive authority to grant waivers or exemptions from presidential delegations under Article II of the Constitution.  That category of waivers and exemptions is outside the scope of this recommendation.*

[3] *See, for example, the Stafford Act, 42 U.S.C. § 5141, authorizing any federal agency charged with the administration of a federal assistance program in a presidentially declared major disaster to modify or waive administrative conditions for assistance if requested to do so by state or local authorities.*

[4] *Of course, agencies cannot issue waivers or exemptions unless authorized by law, and even when authorized by law, agencies must not issue them in an arbitrary fashion.*

[5] *See Admin. Conf. of the U.S., Recommendation 2014-5,* Retrospective Review of Agency Rules, *¶ 5, 79 Fed. Reg. 75,114, 75,116 (Dec. 17, 2014) (identifying petitions from stakeholder groups and members of the public and poor compliance rates as factors to consider in identifying regulations that may benefit from amendment or rescission).*

*Citation: Admin. Conf. of the U.S., Recommendation 2017-7,* Regulatory Waivers and Exemptions, *82 Fed. Reg. 61,728, 61,742 (Dec. 29, 2017).*

*EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL*
*REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315*

**The Honorable Raymond Martinez**

**September 10, 2019**

**Page 10 of 16**

Here, we suggest that given a regulatory climate in which: (1) FMCSA has failed since 2013 to report on the appropriateness of the bonding requirement as directed by Congress so that Congress might act to lower the bond; (2) FMCSA has failed since 2013 to proceed with its promises to commence a "comprehensive enforcement program" to deal with illegal intermediaries; and (3) FMCSA has failed to commence rulemaking since our 2018 request to codify past ICC rulings that make it clear that unlicensed "dispatch services" are, in effect, unfairly competing by operating as illegal intermediaries without a bond at all, small brokers and forwarders trying to operate lawfully and small carriers and independent owner-operators wishing to add brokerage components to their existing businesses are at a distinct and unfair disadvantage when having to post $75,000 in financial security.

We believe ACUS would suggest, here, that an exemption is appropriate along the lines of "much-needed flexibility to respond to situations in which generally applicable laws are a poor fit for a given situation" ... and that the climate we cite constitutes "...unforeseen circumstances (that) may also render compliance with statutory or regulatory requirements impossible or impracticable..." and that "requiring strict adherence to legal requirements may not be desirable."

SBTC believes no small transportation intermediary entity should have to be bonded until and unless <u>all</u> small intermediary entities are required to be bonded; that the requirement to be bonded be clearly defined by FMCSA as a matter of a proper definition of the term "broker;" and that the bonding requirement be enforced against all intermediaries in a fair and even fashion. Until FMCSA levels the playing field, enforcement against some transportation intermediaries --but not others --constitutes an unlawfully arbitrary and capricious regulatory scheme.

Whereas AIPBA sought for the FMCSA to "permanently exempt all property brokers and freight forwarders from the $75,000 broker bond provision of MAP-21. . . .", comes now, the SBTC to request a <u>temporary</u> 5 year exemption from the bonding requirement, one that is limited to <u>small business</u> brokers and forwarders with annual revenues under $15.010 million[12], which, again, is the small business threshold set by the Small

---

[12] As measured by total revenues, but excluding funds received in trust for an unaffiliated third party, such as bookings or sales subject to commissions. The commissions received are included as revenue.

*EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315*

**The Honorable Raymond Martinez**

**September 10, 2019**

**Page 11 of 16**

Business Administration for entities involved with "Freight Transportation Arrangement" (NAICS Code 488510).[13]

SBTC contends that by narrowing the class to small business entities, it is requesting a bona fide, lawful exemption from the bonding statute as opposed to asking for the nullification of an act of Congress. As large intermediaries would still be required to comply with the bonding requirement, this revised application for exemption cannot be now reasonably construed as asking FMCSA to nullify an act of Congress outright and we have reasonably addressed the FMCSA's concern.

Like AIPBA in its original application, SBTC again points to how FMCSA previously expressed concern about the anti-competitive impact of bonds over $25,000 on small entities back in November 2010. Specifically, FMCSA at the time stated:

> *"commenters that favored increasing the amount of the surety bond or trust fund did not provide adequate justification for an increase above $25,000, especially in light of the number of small business household goods brokers and the potential impact of significantly increasing the amount of financial responsibility beyond a level adjusted for inflation."*

This is now FMCSA's chance to utilize its regulatory expertise and exemption authority duly granted by Congress to press the pause button and address a bona fide grievance the licensed small business intermediary community has and reverse anti-competitive effects FMCSA knows the $75,000 bond has caused, but has just not revealed to Congress yet.

**FMCSA Claim Two:** "AIPBA's exemption application does not meet the factors provided in section 13541 because (1) the new $75,000 bond requirement is necessary to carry out the National Transportation Policy at 49 U.S.C.13101, (2) there has been no showing that the $75,000 requirement "is not needed to protect shippers from the abuse of market power" and (3) the requested exemption is not in the public interest."

---

[13] https://www.sba.gov/sites/default/files/Size_Standards_Table.pdf

*EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315*

**The Honorable Raymond Martinez**

**September 10, 2019**

**Page 12 of 16**

SBTC Response to FMCSA Claim Two:

Here, the agency addresses the three statutory factors, but does so in an arbitrary and capricious manner. It appears the agency wanted to deny the application, presumably, because it has been captured by big business interests, and it determined the only way it could do so is if it published a statement that says: (1) the new $75,000 bond requirement is necessary to carry out the National Transportation Policy at 49 U.S.C.13101, (2) there has been no showing that the $75,000 requirement "is not needed to protect shippers from the abuse of market power" and (3) the requested exemption is not in the public interest.

But the agency does not offer any rationale or explanation besides these mere statements to indicate **why** the new $75,000 bond requirement is necessary to carry out the National Transportation Policy at 49 U.S.C.13101; or **why** it believes there has been no showing that the $75,000 requirement "is not needed to protect shippers from the abuse of market power" when AIPBA clearly showed the bond, in practice, essentially exists to guarantee payment to carriers, not shippers, and how more competition –not less—actually protects shippers from abuse of market power; or **how** exactly the requested exemption is not in the public interest.

In fact, it has made no showing to these effects whatsoever. Perhaps it did not do so as this comment was an aside to the main reason of denial it offered, namely, that FMCSA did not have the authority to nullify an act of Congress.

Absent such a showing, the law actually **requires** FMCSA to issue the exemption given the word "shall" in the enabling statute. As you have made no showing to the contrary, we contend you **must** now issue the exemption as a matter of law in accordance with the original showing made by AIPBA in the original application which we affirm here.

**Resubmission Process**
FMCSA has promulgated a rule which affords an applicant the right to resubmit an exemption application if denied:

*§ 381.317 May I resubmit my application for exemption if it is denied?*
*If the Administrator denies your application for exemption and you can reasonably address the reasons for denial, you may resubmit your application following the procedures in § 381.310.*

*EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315*

**The Honorable Raymond Martinez**

**September 10, 2019**

**Page 13 of 16**

This rule essentially restarts the application process as per the reference to *§ 381.310, which then invokes, § 381.315(a).*

*§ 381.315 What will the FMCSA do after the agency receives my application for an exemption?*
*(a) The Federal Motor Carrier Safety Administration will review your application and prepare, for the Administrator's signature, a Federal Register notice requesting public comment on your application for an exemption. The notice will give the public an opportunity to review your request and your safety assessment or analysis (required by § 381.310) and any other relevant information known to the agency.*

This rule therefore requires FMCSA to now republish this application in the <u>Federal Register</u> **and again open this matter up for public notice and comment.**

Furthermore, Federal Law codified at 49 U.S. Code § 31315(b)(6) also requires FMCSA to now publish the application in the <u>Federal Register</u> "upon receipt:"
*(6)Notice and comment.—*
*(A)Upon receipt of a request.—*

<u>**Upon receipt**</u> *of an exemption request, the Secretary* **shall** *publish in the Federal Register (or, in the case of a request for an exemption from the physical qualification standards for commercial motor vehicle drivers, post on a web site established by the Secretary to implement the requirements of section 31149) a notice explaining the request that has been filed and shall give the public an opportunity to inspect the safety analysis and any other relevant information known to the Secretary and to comment on the request. This subparagraph does not require the release of information protected by law from public disclosure (emphases added).*

And, the statute requires FMCSA to rule on the application within 180 days:
*49 U.S. Code § 31315(b)((7)Applications to be dealt with promptly.—*
*The Secretary shall grant or deny an exemption request after a thorough review of its safety implications,* ***but in no case later than 180 days*** *after the filing date of such request (emphasis added).*

SBTC therefore requests that FMCSA process this resubmitted application in accordance with the law.

***EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL
REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315***

**The Honorable Raymond Martinez**

**September 10, 2019**

**Page 14 of 16**

**Court Supervision**
As FMCSA has a history and pattern of failing to publish the SBTC's applications for
exemptions in the <u>Federal Register</u> "upon receipt" as is required by Federal Law on
three prior occasions, and the SBTC is currently suing FMCSA in Federal Court over
FMCSA's failure to comply with the aforementioned statute, SBTC intends to request
court supervision over this process to ensure FMCSA complies with procedural
requirements of the aforementioned statute.

**Conclusion**
Finally, FMCSA needs to address the fact that 10,000 small business intermediaries,
including members of the minority brokerage community, were revoked in the first two
weeks of December of 2013 and there are anti-competitive obstacles to entry currently
in place due to a bond obviously set too high for over 40% of the brokerage industry to
handle in 2013. FMCSA has never reported this to Congress. It is now time to do so.

By FMCSA's own admission in its denial of the AIPBA application, whereas AIPBA
offered that 9,800 intermediaries were revoked in the first two weeks of December 2013

as a direct result of enforcement of a $75,000 minimum bond, FMCSA acknowledges in
your decision that 8,962 intermediaries were indeed lost during the entire month of
December 2013, the difference representing a relatively small amount of intermediaries
that were reinstated in the last two weeks of that month and other new non-small
business broker applicants MAP-21 sparked as indicated below.

While FMCSA points to a small increase over the year that followed, it neglects to
acknowledge that a significant part of that increase is due to the fact that MAP-21
reinforced the need for large carriers to obtain broker licenses when they arrange
transportation (formerly asserted to be unregulated as a matter of "interlining") when the
carrier does not take possession of the property at least at some point in the shipment.
The current broker census therefore cannot be fairly attributed to a return of these small
business brokers that were utterly decimated in December 2013... many of whom
continue to operate unlicensed with no bond under the guise of being "dispatchers."

***EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL
REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315***

**The Honorable Raymond Martinez**

**September 10, 2019**

**Page 15 of 16**

The agency properly notes in the denial that the statute states as follows:

> Section 13541(a) of title 49 of the United States Code (49 U.S.C. 13541) requires
> the Secretary of Transportation (Secretary) to exempt a person, **CLASS OF
> PERSONS**, or a transaction or service from the application, in whole or in part, of
> a provision of 49 U.S.C., Subtitle IV, Part B (Chapters 131-149), or to use the
> exemption authority to modify the application of a provision of 49 U.S.C.
> Chapters 131-149 as it applies to such person, **CLASS**, transaction, or service
> when the Secretary finds that the application of the provision (emphases added):
>
> • Is not necessary to carry out the transportation policy of 49 U.S.C. 13101
> • Is not needed to protect shippers from the abuse of market power or that the
> transaction or service is of limited scope; and
> • Is in the public interest.

And while the Agency states:

"The exemption authority provided by section 13541 "may not be used to relieve a
person from the application of, and compliance with, any law, rule, regulation, standard,
or order pertaining to cargo loss and damage [or] insurance… ." 49 U.S.C. 13541(e)(1)."

… it would appear FMCSA has danced around this issue in your decision. If you were to
proclaim bonds are insurance as a matter of law, then this would give rise to the issue
of how financial institutions can continue to issue non-insurance BMC-85 trust fund
instruments without being duly licensed insurance providers.

We note you spoke to this point in a footnote within you April 2014 Report to Congress

(http://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/Financial-Responsibility-
Requirements-Report-Enclosure-FINAL-April%202014.pdf)

*EXEMPTION APPLICATION REQUIRED TO BE PUBLISHED IN THE FEDERAL
REGISTER "UPON RECEIPT" PURSUANT TO 49 U.S. CODE § 31315*

**The Honorable Raymond Martinez**

**September 10, 2019**

**Page 16 of 16**

… when you stated:

> *"The term "financial responsibility" used here refers to insurance. More
> specifically, it means liability coverage for bodily injury or property damage in the
> case of freight and passenger motor carriers as well as freight forwarders. When
> it comes to brokers and freight forwarders, insurance also means coverage for
> claims against unpaid freight charges. The terms "financial responsibility" and
> "insurance" are used interchangeably throughout this report."*

Nonetheless, as AIPBA pointed out in its application, Congress makes the proper
distinction where FMCSA does not.

SBTC is proud to zealously defend the interests of its small business broker and
forwarder members in this matter. We believe we make a good case for why the
exemption should now be granted by FMCSA and that the three statutory factors have
been addressed to support exemption. And we contend our argument is in line with
FMCSA's own rationale and concern about anti-competitive impact of raising the bond
beyond $25,000 during bona fide household goods broker rulemaking between 2007
and 2010. We further believe completion is good for everyone involved including our
carrier members, shippers and the consumer public. We therefore believe there is now
no rational basis for FMCSA to deny this exemption application and we look forward to
your timely approval of this request.

Sincerely,


/s/JAMES LAMB, President
Small Business in Transportation Coalition ("SBTC")



**EXHIBIT**
C



**U.S. Department
of Transportation**

**Federal Motor Carrier
Safety Administration**

**Administrator**

1200 New Jersey Avenue, SE
Washington, DC 20590

November 19, 2019

Mr. James Lamb
President
Small Business in Transportation Coalition
1775 I. Street, NW, Suite 1150
Washington, DC 20006

Dear Mr. Lamb:

Thank you for your letter to U.S. Secretary of Transportation Elaine L. Chao concerning the
Small Business in Transportation Coalition's (SBTC) resubmittal of its application for an
exemption from the Federal Motor Carrier Safety Administration's (FMCSA) electronic logging
devices (ELD) requirements. Your letter was forwarded to FMCSA's Office of Policy for a
reply.

The FMCSA acknowledges your concerns about the impact of the ELD requirements on small
businesses. The Agency denied your previous application for an exemption from the ELD rule
on July 17, 2019, and you requested reconsideration of that decision on August 14.

The Agency is processing your request in accordance with 49 CFR part 381, "Waivers,
Exemptions, and Pilot Programs." Under § 381.320 FMCSA must issue a final decision within
180 days after receiving an exemption request. Because your application for reconsideration was
received in mid-August, the Agency is well within the 180-day window. The Federal Register
notice seeking comment on your request for reconsideration was published on October 29, 2019,
and provides interested parties 30 days to submit comments to the public docket. A copy of the
notice is enclosed.

Should you have any questions, please contact Ms. La Tonya Mimms, Chief, Driver and Carrier
Operations Division, at 202 366-9220, or email her at latonya.mimms@dot.gov.

Sincerely,

Jim Mullen

Jim Mullen
Acting Administrator

Enclosure